UNITED STATES of America,
Plaintiff-Appellee,

v.

William T. TAYLOR,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Billy J. FLORENCE,
Defendant-Appellant.

Nos. 81–1753, 81–1754.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 5, 1982.

Decided Dec. 1, 1982.

Rehearing Denied Jan. 18, 1983.

Michael J. Brady, Little, Fisher, Brady, Bromley & Siegel, P.C., Tucson, Ariz., for defendant-appellant.

Susan Ehrlich, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before FARRIS and CANBY, Circuit Judges, and WHELAN,* District Judge.

* Honorable Francis C. Whelan, Senior United States District Judge for the Central District of California, sitting by designation.

CANBY, Circuit Judge:

William Taylor and Billy Florence appeal their jury convictions for participating in a strike against the federal government in violation of 18 U.S.C. § 1918(3). We affirm.

## I. FACTS

Taylor and Florence were president and vice president, respectively, of the Professional Air Traffic Controllers Organization (PATCO) Local 572. They were employed by the Federal Aviation Administration as air traffic controllers in Tucson, Arizona. On August 3, 1981, the national president of PATCO announced a nationwide strike. Of the forty-one Tucson air traffic controllers who failed to report to work during the strike, only Taylor and Florence were prosecuted. On August 4, 1981, the government issued criminal complaints against them. On August 25, a grand jury returned indictments charging Taylor with striking on August 8 and Florence with striking on August 3. The cases were consolidated for trial.

Defendants moved to dismiss the indictments because of infirmities in the charging statute and on the grounds of selective prosecution. The district court denied the motions and defendants proceeded to trial. After the jury returned guilty verdicts, the judge suspended imposition of sentence and placed defendants on one year's probation.

On appeal, Taylor and Florence contend that the district court erred in refusing to dismiss the indictments. They also allege numerous errors at their trial. None of their contentions requires reversal.

## II. 18 U.S.C. § 1918(3)

### Severance

■ Defendants moved to dismiss the indictments on the ground that the charging statute, 18 U.S.C. § 1918(3), prohibiting strikes against the federal government, is unenforceable because a portion of its defining statute, 5 U.S.C. § 7311(3), dealing with assertion of the right to strike, has been found unconstitutional. The district court properly denied the motion.

Under 5 U.S.C. § 7311(3), a person may not hold or accept employment with the federal government if he "participates in a strike, or asserts the right to strike" against the federal government. Section 1918(3) of title 18 renders this conduct criminal:

Whoever violates the provisions of section 7311 of title 5 that an individual may not accept or hold [federal employment] if he—

. . . .

(3) participates in a strike, or asserts the right to strike, against the [federal government] . . .

. . . .

shall be fined not more than $1,000 or imprisoned not more than one year and a day, or both.

Appellants contend that the clause in 5 U.S.C. § 7311(3) concerning assertion of the right to strike is unconstitutional. *National Association of Letter Carriers v. Blount,* 305 F.Supp. 546 (D.D.C.1969), *appeal dismissed,* 400 U.S. 801, 91 S.Ct. 7, 27 L.Ed.2d 33 (1970). They argue that this unconstitutional portion cannot be severed from the accompanying clause dealing with participation in a strike and that the whole statute therefore must fall. They further contend that since § 1918 depends on § 7311 for its definitions, it is meaningless and unenforceable against them.

We agree that assertion of the right to strike is protected by the First Amendment. We do not agree, however, that 5 U.S.C. § 7311 or 18 U.S.C. § 1918 is thereby rendered totally invalid. The Supreme Court has affirmed summarily a decision upholding the constitutionality of 18 U.S.C. § 1918(3) insofar as it prohibits strikes against the federal government. *United Federation of Postal Clerks v. Blount,* 325 F.Supp. 879 (D.D.C.), *aff'd mem.,* 404 U.S. 802, 92 S.Ct. 80, 30 L.Ed.2d 38 (1971). The court in *United Federation of Postal Clerks* expressly noted that the portion of 18 U.S.C. § 1918(3) inhibiting assertion of the right to strike was invalid. *Id.* at 881. Nevertheless, the court severed this part by implication and upheld the prohibition against participation in strikes.

We too are satisfied that the statutes are severable. "Unless it is evident that the

legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as law." *United States v. Jackson,* 390 U.S. 570, 585, 88 S.Ct. 1209, 1218, 20 L.Ed.2d 138 (1968), quoting *Champlin Refining Co. v. Commission,* 286 U.S. 210, 234, 52 S.Ct. 559, 564, 76 L.Ed.2d 1062 (1932). We find it quite unlikely that Congress would have chosen to discard the prohibition against participation in a strike if it could not have included the clause prohibiting assertion of the right to strike. *See Jackson,* 390 U.S. at 586, 88 S.Ct. at 1218; *United States v. Hicks,* 625 F.2d 216, 221 n. 10 (9th Cir.1980), *rev'd on other grounds,* 450 U.S. 1036, 101 S.Ct. 1752, 68 L.Ed.2d 233 (1981). The legislative history evinces no contrary congressional intent.[1]

Once the offending clause is removed, the remainder is fully operative.[2] The assertion of the right to strike is logically distinct from participation in a strike, and the clauses are in the disjunctive. We accordingly conclude that the prohibition against striking contained in 18 U.S.C. § 1918(3) is valid and enforceable.

### Vagueness

■ Taylor and Florence next moved to dismiss the·indictments on the ground that 18 U.S.C. § 1918 is void for vagueness. They argued that although § 1918 requires a person to "hold a position" with the federal government before liability may attach, the statute is unclear as to who "holds a position." The district court ruled that the only reasonable interpretation of this provision is that a person "holds a position" with the federal government when he is currently a federal employee.[3] We agree.

·The wording of the statute is sufficient to give a person of ordinary intelligence fair notice that his or her contemplated conduct is forbidden.[4] This is all the Constitution requires. *Bouie v. City of Columbia,* 378 U.S. 347, 351, 84 S.Ct. 1697, 1701, 12 L.Ed.2d 894 (1964) *quoting United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954).

### III. SELECTIVE PROSECUTION

■ Taylor and Florence also moved to dismiss the indictments because of selective prosecution. They argued that the government deliberately targeted them for prosecution because they exercised their First Amendment rights to hold office, to engage actively in union affairs, and to make public statements on union activities. The district court denied the motion because the evidence adduced at a hearing on the issue did

---

1. The prohibition against asserting the right to strike and against participation in a strike were first passed together as a rider to the Third Urgent Deficiency Appropriation Act of 1946, 60 Stat. 268 (1946), S.Rep. No. 1256, 84th Cong., 1st Sess. (1955), *reprinted in* [1955] U.S. Code Cong. & Ad.News 2873; H.R.Rep. No. 1152, 84th Cong., 1st Sess. 1, 2 (1955). Previous riders prohibiting the use of governmental appropriations to pay wages or salaries to persons advocating or belonging to organizations advocating the overthrow of the United States by force or violence had been included in each regular deficiency and supplemental appropriation act, with seven exceptions, since the Fourth Supplemental National Defense Appropriation Act of 1941, 55 Stat. 42 (1941). S.Rep., *supra.* In passing the predecessor to § 1918, Congress expressed an intent only to clarify and consolidate the various riders. *Id.*

2. *Carter v. Carter Coal Co.,* 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1936), on which appellants rely, is inapposite. That case concerned a complex act which sought to regulate both la-

bor and prices in the coal industry. After invalidating the labor portion of the Act, the Court determined that Congress believed that the regulation of both labor and prices was necessary to stabilize the industry. Because the price fixing portion of the Act was mutually dependent upon and interrelated with the labor provisions, the Court ruled that the pricing provision failed also.

3. We find without merit appellants' argument that they may not be prosecuted under § 1918 because the government has initiated termination proceedings against them. They were "holding" federal positions when they first participated in the strike.

4. We summarily reject appellants' contention that § 1918(3) does not prohibit striking and therefore fails to state a criminal offense. The clear statutory consequence of striking while in the government's employ is potential criminal prosecution.

not demonstrate impermissible selective prosecution. Applying the "clearly erroneous" standard, *United States v. Wilson,* 639 F.2d 500, 503 (9th Cir.1981), we affirm the court's ruling.

The district court found that the government selected Taylor and Florence for prosecution only because they were the leaders of an illegal strike and their prosecution might deter others from striking. The record amply supports the finding that Taylor and Florence were actively engaged in organizing and leading the strike. Taylor testified that he had arranged with the national office at PATCO to notify every member of the local union of the strike and had designated a committee for preparation of picket signs and banners. He also set up picketing schedules and testified that Florence had assisted him in these activities. Before and during the strike, both men made numerous public statements in their representative capacities.

There is nothing constitutionally infirm in prosecuting leaders of an illegal strike. Indeed, it is quite rational to do so to enhance the deterrent effect of the enforcement procedure. *See United States v. Ness,* 652 F.2d 890, 892 (9th Cir.) (per curiam), *cert. denied,* 454 U.S. 1126, 102 S.Ct. 976, 71 L.Ed.2d 113 (1981). It is also quite rational for the government, in deciding whether or not to prosecute, to consider whether the potential defendants have, by their public statements or otherwise, made clear their actual or intended participation in the illegal activity.[5]

Taylor and Florence were required to show that the government selected them from a larger group of non-prosecuted alleged violators[6] because of their exercise of a constitutional right. *Wilson,* 639 F.2d at 503. The district court found that the evidence did not support defendants' contention and we cannot say this finding is clearly erroneous.

Taylor and Florence contend that an affidavit filed with the district court by the government establishes that they were selected for prosecution because of their union offices, rather than for their leadership of the illegal strike. The affidavit, filed by the Assistant United States Attorney who decided to prosecute them, states that because Taylor and Florence, as president and vice-president of the local PATCO union, were the "presumptive" leaders of the strike, it was believed that their prosecution would deter others from leading such illegal activity. We are unwilling to conclude, however, that the general and somewhat ambiguous language of this affidavit establishes as a matter of law that the government decided to prosecute defendants for their associational rather than for their strike-related activities. Other evidence produced at the hearing showed far more than "presumptive" leadership of the strike by Taylor and Florence. In light of all the evidence, the finding of the district court that defendants were not the victims of impermissible selective prosecution was not clearly erroneous. We therefore uphold it.

## OTHER ALLEGED ERRORS

We find no merit in any of appellants' remaining contentions. First, the denial of their motion to continue the trial was not an abuse of discretion. The alleged prejudicial pre-trial publicity was not focused on the defendants but rather on PATCO's decertification in Washington, D.C. The district court's thorough voir dire was

---

5. We previously have held that where the government engages in questionable investigatory techniques and offers no reasonable explanation for its prosecutorial choice, it may be presumed that the government's selection was impermissibly based on the defendant's exercise of his *First Amendment* rights. *United States v. Steele,* 461 F.2d 1148, 1152 (9th Cir. 1972). *Steele,* however, does not stand for the proposition that in making its prosecutorial decision, the government may never consider a person's public statements. Failure to report to work is by itself an equivocal act, and a defendant's statement may be most useful in showing that the failure to report was in fact participation in or leadership of an illegal strike.

6. The government concedes that defendants meet this prong of the test since no other Tucson air traffic controllers have been prosecuted.

more than adequate to uncover any prejudice. *See United States v. Flores-Elias,* 650 F.2d 1149, 1151 (9th Cir.), *cert. denied,* 454 U.S. 904, 102 S.Ct. 412, 70 L.Ed.2d 223 (1981).

■ Second, there was no abuse of discretion in denying defendants' motion to depose President Reagan and F.A.A. Administrator Helms. Taylor and Florence failed to make an adequate showing that the proposed testimony would be sufficiently favorable to the defense to warrant the depositions. *See United States v. Trenary,* 473 F.2d 680, 682 (9th Cir.1973).

■ Third, the district court properly exercised its discretion in refusing to admit into evidence public statements made by President Reagan. Defendants failed to make a proper showing that the evidence was admissible. Moreover, the President's statement on August 3, 1981 that if the air traffic controllers did not return to work within 48 hours, they would be terminated, cannot be construed as a promise of immunity from criminal prosecution.[7] The President's statement of August 13, 1981 that "there is no strike" has no bearing on whether Taylor and Florence participated in a strike prior to that date.

■ Fourth, the district court did not abuse its discretion by allowing into evidence portions of the appointment affidavit executed by Taylor upon entering federal service. Prior to admitting the affidavit, those portions stating that Taylor would not assert the right to strike or belong to an organization asserting the right to strike were stricken. The remaining portion stating that Taylor would not participate in a strike was clearly admissible.

■ Fifth, the district court did not err in failing to instruct the jury that "striking" does not include quitting because of abnormally dangerous working conditions. The evidence defendants might have introduced to support such an instruction could come in only under the defenses of necessity or duress. *See United States v. Lowe,* 654 F.2d 562, 566–67 (9th Cir.1981) (necessity); *United States v. Hernandez,* 608 F.2d 741, 750 (9th Cir.1979) (duress). Prior to trial, the government made a motion to exclude evidence on these defenses. Defendants did not oppose the motion. It is not error to fail to give a requested instruction where the evidence to support that instruction has been excluded without objection.[8]

■ Sixth, there was no error in denying defendants' motion for acquittal based on insufficient evidence. There was ample evidence of a strike and of defendants' participation in it. A majority of employees, including defendants, did not report to work during the first week of the strike. Neither defendant offered any excuse for his failure to report to work and both defendants made public statements on August 5 which indicated the strike's existence and their participation in it. Viewing the evidence in a light most favorable to the government, there was sufficient evidence from which the jury could reasonably find defendants guilty beyond a reasonable doubt. *United States v. Carrier,* 654 F.2d 559, 561 (9th Cir.1981).

---

7. At another point in their appellate briefs, appellants argue that the government improperly initiated charges against them during the 48-hour grace period created by President Reagan. They made no motion to dismiss the indictments on these grounds, and it is not clear what ruling they are appealing. In any case, there was no error. To the extent that appellants erroneously believe they were given amnesty, their mistake of law is no defense. *See United States v. Ness,* 652 F.2d 890, 893 (9th Cir.) (per curiam), *cert. denied,* 454 U.S. 1126, 102 S.Ct. 976, 71 L.Ed.2d 113 (1981).

8. In light of appellants' acquiescence in the ruling that evidence of abnormally dangerous working conditions was inadmissible, we are unable to see any merit in their argument that they were entitled to the instruction because the Taft-Hartley Act (which does not apply to federal employees) states that striking does not include quitting under such conditions. 29 U.S.C. § 143.

Accordingly, the convictions are AFFIRMED.